# EXHIBIT 3

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Angela Braun, Executive Officer
9/24/2026 3:39 PM
By: Narzralli Baksh , Deputy

Michel R. Huff, Esq., SBN 269472
Huff Legal, PC
1440 Broadway, Suite 200 #1025
Oakland, CA 94612
(510) 545-4500
info@hufflegal.com
huff@hufflegal.com

Attorneys for Plaintiff ELIZABETH M. KIM, M.D.

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA BARBARA**

| | |
|---|---|
| **ELIZABETH M. KIM, M.D., an individual,**<br><br>Plaintiff,<br><br>v.<br><br>**ALMA LASERS, INC., an Illinois corporation; and DOES 1 through 20, inclusive,**<br><br>Defendants. | **Case No.:** 26CV06152<br><br>**COMPLAINT FOR:**<br><br>1. BREACH OF CONTRACT;<br>2. FRAUDULENT INDUCEMENT / PROMISSORY FRAUD;<br>3. NEGLIGENT MISREPRESENTATION;<br>4. RESCISSION AND RESTITUTION;<br>5. UNFAIR COMPETITION (BUS. & PROF. CODE § 17200 ET SEQ.); AND<br>6. DECLARATORY RELIEF<br><br>DEMAND FOR JURY TRIAL<br><br>Unlimited Civil Case |

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

Plaintiff Elizabeth M. Kim, M.D. ("Dr. Kim" or "Plaintiff"), alleges against Defendant Alma Lasers, Inc. ("Alma") and Does 1 through 20 (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1. This action arises from Alma's sale of an Alma Duo medical-aesthetic device to a solo family physician for $129,000. Alma's sales process did not present the machine as a stand-alone piece of equipment. Alma, through its sales representatives, presented the transaction as a supported launch and business "partnership" that would include training, onboarding, marketing assistance, responsive local representation, and connections to physicians successfully using the device.

2. Those assurances mattered. Dr. Kim told Alma before contracting that this was her first aesthetic device, that she was skeptical about buying from a remote company, and that she required continuing assistance and access to experienced physician users before she could responsibly launch the service.

3. Dr. Kim executed the purchase order on or about September 29, 2025. Alma delivered the device in early October 2025. Approximately two weeks later, Alma terminated Calvin Lee, the salesperson who cultivated the relationship and repeatedly met with Dr. Kim and her staff. Alma did not provide a comparable transition or continuity of support.

4. Although Alma later assigned other personnel and provided a short equipment demonstration, it did not deliver the promised supported launch. Repeated requests for physician contacts, complete launch materials, and meaningful follow-through went unanswered or produced assurances that were not performed. The device has never been placed into clinical service and remains substantially in its delivered condition.

5. Dr. Kim has nevertheless been required to service acquisition financing, including monthly withdrawals of approximately $3,583.68, and to maintain equipment insurance. She seeks rescission, restitution, cancellation or payoff of the acquisition obligation, consequential relief to the extent recoverable, and other appropriate remedies.

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

## PARTIES

6. Plaintiff Elizabeth M. Kim, M.D. is an individual and a solo family physician who resides and practices in Santa Barbara County, California. Her medical office is located at 5333 Hollister Avenue, Suite 295, Santa Barbara, California 93111.

7. Defendant Alma Lasers, Inc. is, on information and belief, an Illinois corporation that markets and sells medical-aesthetic devices throughout California, including in Santa Barbara County. Alma's United States headquarters is located at 485 Half Day Road, Suite 100, Buffalo Grove, Illinois 60089.

8. Plaintiff does not presently know the true names and capacities of Defendants sued as Does 1 through 20 and therefore sues them by fictitious names. Plaintiff will amend this Complaint when their identities are ascertained. Each Doe Defendant participated in, authorized, ratified, or is legally responsible for the conduct alleged.

9. At all relevant times, each individual who communicated with Plaintiff on Alma's behalf acted within the course and scope of that agency or employment. Alma authorized or ratified those communications and accepted the benefit of the resulting sale.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction because the amount in controversy exceeds $25,000 and Plaintiff seeks legal and equitable relief.

11. Venue is proper in Santa Barbara County under Code of Civil Procedure section 395.5 because Alma made and performed material portions of the transaction here, delivered and installed the device here, directed sales and support communications here, and the obligations and injuries alleged arose here.

12. The purchase terms contain an Illinois choice-of-law provision. Plaintiff pleads California statutory remedies and California public policy in the alternative and reserves the right to amend after production of the complete, legible agreement and any financing documents. To the extent Illinois substantive law governs any issue, Plaintiff alleges the corresponding rights and remedies available under that law.

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

## FACTUAL ALLEGATIONS

13. Beginning in approximately May 2025, Alma sales representative Calvin Lee solicited Dr. Kim to purchase equipment for treatments involving sexual wellness and related therapeutic applications.

14. Between approximately May and September 2025, Lee communicated repeatedly with Dr. Kim and made in-person visits to her Santa Barbara office. He met her staff, provided product information, and cultivated the transaction as a continuing business relationship rather than a one-time equipment delivery.

15. Before contracting, Dr. Kim explained that she was a first-time aesthetic-device purchaser and needed hands-on launch support, training, responsive local representation, marketing and onboarding assistance, and introductions to physicians—including a primary-care physician—who had successfully incorporated the Alma Duo into practice.

16. Lee and other Alma personnel represented, in substance, that Alma would support the launch, work with Dr. Kim and her staff, connect her to appropriate resources and physician users, and help with onboarding and marketing. On September 29, 2025, Lee texted that he looked forward to meeting Dr. Kim and her staff "to go over everything, especially the partnership."

17. Alma's sales materials likewise described follow-up support and ongoing assistance after purchase. Alma's own public-facing support information states that buyers receive reference and operating materials and that local teams provide professional support.

18. In reasonable reliance on these representations, Dr. Kim signed Alma's quotation/purchase order on or about September 29, 2025 for an Alma Duo system at a stated price of $129,000.

19. The transaction was financed. The disclosed payment structure included introductory payments followed by approximately 60 monthly payments, and Dr. Kim has incurred monthly withdrawals of approximately $3,583.68 plus equipment-insurance costs.

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

20. The device arrived at Dr. Kim's office in early October 2025. It has not been used to treat patients or generate revenue.

21. On October 17, 2025—roughly two weeks after delivery—Lee informed Dr. Kim that Alma had terminated him that day. Lee had been the central person responsible for the sales relationship and anticipated launch support. Alma did not warn Dr. Kim before contracting that her principal representative would be removed immediately after delivery.

22. Alma assigned Drew Zucker as a replacement representative. Dr. Kim promptly communicated her concerns about training, appropriate indications, manuals, onboarding, the promised physician connections, and the financing charges.

23. Alma personnel repeatedly assured Dr. Kim that they would connect her to resources, that they had her back, and that circumstances would turn around. Zucker stated that the onboarding consultants would help and that he would connect Dr. Kim to them. The promised physician connection and sustained launch support did not occur.

24. A trainer visited in or around November 2025, but the visit was brief and did not cure the absence of the continuing support, physician-user access, materials, and launch assistance that induced the purchase.

25. Dr. Kim repeatedly requested the identity of a physician using the Duo, the principal advertising manual, and guidance concerning pain-management applications. Her messages document delayed, incomplete, and ultimately absent responses.

26. By April and May 2026, Dr. Kim was still asking Zucker to connect her with the physician user previously discussed and asking whether he still worked for Alma. Messages were delivered but did not produce the promised support.

27. Dr. Kim escalated the matter to Alma, including written complaints on July 17 and July 23, 2026, and demanded that Alma accept return of the unused device and reimburse or unwind the transaction. Alma did not provide the requested relief.

28. Dr. Kim has kept the device available for return, substantially unused and protected at her office. She is ready, willing, and able to tender it upon Alma's concurrent return of the consideration and arrangement for payoff or cancellation of the acquisition financing.

29. Alma's failure to deliver the promised supported launch substantially impaired the value of the transaction to Dr. Kim. Had the true facts been disclosed, Dr. Kim would not have entered the transaction or incurred the financing and insurance obligations.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

*(Against Alma)*

30. Plaintiff realleges paragraphs 1 through 28.

31. A written purchase agreement existed between Plaintiff and Alma. The agreement and incorporated transaction included Alma's obligations concerning delivery, installation, training, manuals and related support, together with the parties' course of dealing and written follow-up commitments.

32. Plaintiff performed, substantially performed, or was excused from further performance. She accepted delivery, made required financing-related payments, maintained the device and insurance, and repeatedly made herself available for performance.

33. Alma breached by failing to provide the promised and contractually contemplated training, materials, onboarding, continuity, and support necessary to place the Duo into service, and by failing to cure after notice.

34. As a direct and proximate result, Plaintiff has suffered damages in an amount to be proven, including amounts paid toward the device, insurance and related out-of-pocket expenses, subject to proof and enforceability of any contractual limitations.

**SECOND CAUSE OF ACTION**

**(Fraudulent Inducement / Promissory Fraud)**

*(Against Alma and Does 1-10)*

35. Plaintiff realleges paragraphs 1 through 33.

36. Before Plaintiff signed, Alma, through Lee and other authorized sales personnel, represented that the transaction would include an ongoing supported launch, responsive representation, training and onboarding assistance, marketing assistance, and meaningful

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

connections with physicians successfully using the Duo. Lee specifically framed the parties' relationship as a "partnership" during the September 29, 2025 sales process.

37. These representations concerned existing resources and Alma's then-present intention to perform specific future support commitments. They were material because Plaintiff had expressly stated that she lacked aesthetic-device experience and would not launch without support and physician-user guidance.

38. On information and belief, when the promises were made Alma did not intend to provide them as represented, or made them recklessly without a reasonable basis and without disclosing that the salesperson responsible for the relationship would be terminated immediately after delivery and no equivalent support structure was in place.

39. Alma intended Plaintiff to rely on the representations to sign the purchase order and cause the transaction to be funded. Plaintiff reasonably relied by executing the agreement and accepting delivery.

40. The representations were false or misleading. The promised supported launch and physician access were not delivered, and repeated post-sale assurances were not performed.

41. Plaintiff was damaged as a direct result in an amount to be proven. Alma's conduct was undertaken through managing agents or was authorized or ratified, entitling Plaintiff to punitive damages to the extent permitted by Civil Code section 3294.

## THIRD CAUSE OF ACTION

**(Negligent Misrepresentation)**

*(Against Alma and Does 1-10)*

42. Plaintiff realleges paragraphs 1 through 40.

43. In the alternative to intentional fraud, Alma's representatives supplied false or misleading information about the existing support infrastructure, physician-user network, onboarding resources, and Alma's ability and plan to support Plaintiff's launch.

44. Alma lacked reasonable grounds for those representations. It was in a superior position to know its staffing, territory coverage, available physician references, training resources, and ability to provide the described launch support.

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

45. Alma intended Plaintiff to rely, Plaintiff reasonably relied, and the reliance caused the pecuniary losses alleged above.

**FOURTH CAUSE OF ACTION**

**(Rescission and Restitution)**

*(Against All Defendants)*

46. Plaintiff realleges paragraphs 1 through 44.

47. Plaintiff's consent was obtained by fraud or mistake, and material consideration failed through Alma's fault, within the meaning of Civil Code section 1689 and applicable commercial law.

48. Plaintiff has notified Alma of her election to rescind and has offered, and again offers, to restore the unused device upon Alma's concurrent restoration of all consideration, reimbursement of recoverable expenses, and payoff or cancellation of the associated acquisition obligation.

49. Alternatively, Plaintiff justifiably revokes acceptance under Commercial Code section 2608 because the uncured nonconformity substantially impairs the transaction's value to her and acceptance was induced by Alma's assurances. Plaintiff seeks the remedies provided by Commercial Code section 2711.

50. Plaintiff seeks rescission, restitution, interest, and all consequential equitable relief required to restore the parties to the status quo.

**FIFTH CAUSE OF ACTION**

**(Unfair Competition (Bus. & Prof. Code § 17200 et seq.))**

*(Against All Defendants)*

51. Plaintiff realleges paragraphs 1 through 49.

52. Alma engaged in unlawful, unfair, or fraudulent business acts by using material support and onboarding representations to induce a high-value equipment sale and then failing to provide the represented infrastructure or promptly unwind the transaction after notice.

53. Plaintiff lost money or property as a result, including payments and expenses associated with an unusable commercial launch. She seeks restitution and injunctive relief

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612

appropriate to prevent retention of funds obtained through the challenged practices. Plaintiff does not seek nonrestitutionary damages under this cause of action.

## SIXTH CAUSE OF ACTION

**(Declaratory Relief)**

*(Against All Defendants)*

54. Plaintiff realleges paragraphs 1 through 52.

55. An actual controversy exists concerning whether Plaintiff validly rescinded or revoked acceptance, whether Alma must accept return of the device, and whether Alma must return the purchase consideration and arrange satisfaction of the acquisition financing.

56. Plaintiff seeks a declaration of the parties' rights and obligations and such further equitable relief as is necessary to effectuate that declaration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a) For rescission of the purchase transaction and restitution of all amounts paid or caused to be paid;

b) For an order requiring Alma to accept return of the device and to pay off, cancel, or otherwise discharge the associated acquisition obligation without adverse credit reporting to Plaintiff;

c) For compensatory damages according to proof at trial, including but not limited to the $129,000 purchase price, monthly financing payments of approximately $3,583.68 incurred since October 2025, and equipment-insurance premiums;

d) For incidental and consequential damages to the extent permitted by law and contract;

e) For restitution and injunctive relief under Business and Professions Code section 17203;

f) For prejudgment and post judgment interest according to law;

g) For punitive damages on the fraud claim to the extent permitted by law;

h) For costs of suit and attorney's fees where authorized by contract, statute, or other law; and

i) For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 24, 2026

**HUFF LEGAL, PC**

Michel R. Huff, Esq.
Attorney for Plaintiff
**ELIZABETH M. KIM, M.D**

HUFF LEGAL, PC
1440 Broadway Street, Suite 200 #1025
Oakland, CA 94612